IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MALCOLM STAFFORD,

    Plaintiff,

vs.                                                                             1:22-cv-00448-LF

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Malcom Stafford's Brief in Support of Motion to Remand or Reverse (Doc. 20), which was fully briefed on March 8, 2023. *See* Docs. 24, 27, 28. The parties consented to my entering final judgment in this case. Doc. 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") rejected the opinion of consultative examiner DNP Blackwell without substantial evidence. I therefore GRANT Mr. Stafford's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Mr. Stafford is a 54-year-old man who lives in Albuquerque, New Mexico with his daughter and grandson. AR 34, 70, 96.[3] He has a high school education with a single semester of college, and has worked as an office furniture installer, a dock supervisor for DHL, and as a bell hop. AR 40, 56, 363. Mr. Stafford filed an application for Disability Insurance Benefits ("DIB")

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 15-1 through 15-9 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

on January 17, 2018, alleging disability since May 8, 2015, due to injuries to his back and leg.[4] AR 84–85. The Social Security Administration ("SSA") denied his claim initially and on reconsideration. AR 84–121. Mr. Stafford requested a hearing before an ALJ. AR 160–68. On August 17, 2021, ALJ Michael Leppala held a hearing. AR 50–83. ALJ Leppala issued his unfavorable decision on September 24, 2021. AR 21–42.

The ALJ found that Mr. Stafford met the insured status requirements of the Social Security Act through June 30, 2022. AR 27. At step one, the ALJ found that Mr. Stafford had not engaged in substantial, gainful activity since June 1, 2015. *Id*. At step two, the ALJ found that Mr. Stafford's spondylosis of lumbosacral region with radiculopathy, spondylolisthesis and intervertebral disc degeneration of lumbosacral region, post laminectomy syndrome of lumbar region, rheumatoid arthritis, osteoarthritis, and obesity were severe impairments. AR 28. At step three, the ALJ found that none of Mr. Stafford's impairments, alone or in combination, met or medically equaled a Listing. AR 31–33. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Stafford's RFC. AR 33–40. The ALJ found Mr. Stafford had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitation. The Claimant is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, crawling, and reaching overhead with [his] dominant left upper extremity. The Claimant is limited to frequent exposure to extreme cold and unprotected heights, dangerous machinery, and moving machinery.

AR 33.

---

[4] Mr. Stafford filed an earlier claim for benefits on September 30, 2015. The ALJ found no reason to reopen the prior application. AR 24–25. Therefore, the ALJ's decision and this review are based only on the record from Mr. Stafford's subsequent application.

At step four, the ALJ concluded that Mr. Stafford was not capable of performing any of his past relevant work. AR 40–41. At step five, the ALJ found that Mr. Stafford was able to perform work that existed in sufficient numbers in the national economy, including as a routing clerk, ticket seller, or collator operator. AR 41–42. The ALJ thus found Mr. Stafford not disabled at step five. AR 42.

Mr. Stafford requested that the Appeals Council review the ALJ's unfavorable decision. AR 239–41. On May 5, 2022, the Appeals Council denied the request for review. AR 1–3. Mr. Stafford timely filed his appeal to this Court on June 14, 2022. Doc. 1.[5]

## IV.     Mr. Stafford's Claims

Mr. Stafford raises four arguments for reversing and remanding this case:

1. The Appeals Council did not consider qualifying additional evidence submitted by Mr. Stafford, *see* Doc. 20 at 5–12;
2. The ALJ failed to properly assess the opinion of consultative examiner DNP LaTanyua Blackwell, *see id.* at 12–21;
3. The ALJ failed to properly assess the opinion of treating physician Dr. Timothy A. Burd, *see id.* at 21–23; and
4. The ALJ's RFC is not based on substantial evidence because he failed to account for Mr. Stafford's subjective symptom allegations, *see id.* at 23–26.

Because I find that the ALJ failed to properly assess the opinion of DNP Blackwell, I will not address the other issues raised by Mr. Stafford because they may be affected by the Commissioner's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

V.  **Analysis**

   A.  **DNP Blackwell**

Consultative examiner DNP LaTanyua Blackwell evaluated Mr. Stafford at the request of the State of New Mexico Disability Determination Services. AR 791–92. In addition to reviewing Mr. Stafford's medical records, DNP Blackwell conducted a physical examination that included comprehensive testing of the ranges of motion available to Mr. Stafford at each of his joints. AR 792–98. DNP Blackwell assessed that Mr. Stafford, "if not experiencing symptoms of back injury, gout, L[eft] shoulder injury, [degenerative disc disease], L[eft] hip pain, or IBS," could, during an eight-hour workday, stand for three to four hours, walk for one to two hours, and sit for three to four hours. AR 798. I find that ALJ Leppala rejected these limitations without substantial evidence and therefore remand.

The ALJ acknowledged the above limitations in his discussion of DNP Blackwell's opinion but found the opinion "unpersuasive" and instead found that Mr. Stafford had the RFC to stand and/or walk for "about six hours" and sit for "about six hours" in an eight-hour workday. AR 33, 38. The ALJ rejected DNP Blackwell's opinion for three main reasons: (1) her exam did not support her findings; (2) her opinion was based on a one-time exam; and (3) she considered Mr. Stafford's reported symptoms. AR 39. The ALJ's discussion of DNP Blackwell's opinion is as follows:

> [DNP[6] Blackwell's] actual examination showed 4+ out of 5 strength at the left shoulder, elbow, wrist, and hand. The Claimant had abnormal range of motion of the cervical and thoracolumbar spine, and reduced range of motion of the left shoulder. The Claimant had reduced range of motion of the right knee and both ankles. It appears range of motion of all other joints was normal, including the

---

[6] The ALJ referred to DNP Blackwell as "Ms. Blackwell," AR 38–39, without reference to her medical credentials, which are substantial, *see* AR 791. Her highest credential appears to be a Doctor of Nursing Practice, or DNP. *See id.* The Court, therefore, will refer to this consultative examiner as DNP Blackwell.

> elbows, wrists, hands and fingers (Exhibit 14F). The normal upper extremity range of motion, except for the left shoulder, does not fully support the presence of frequent manipulative limitations in reaching, handling, feeling, grasping, and fingering [assuming bilaterally], as found by [DNP] Blackwell. Further, [DNP] Blackwell based her opinion of limitations on a one-time examination and relied on the Claimant's reported symptoms as well. With the presence of the Claimant's symptoms, she indicated the Claimant may be unable to perform work within the limitations stated. Her medical opinion is inconsistent with other substantial evidence.
>
> The Claimant had an assigned work restriction issued by Dr. Burd and Dr. Burd released the claimant to work with those restrictions if the Claimant had a job to return to. The Claimant went back to work part-time in 2018, and he has been receiving consistent pain management treatment for his back pain symptoms. [DNP] Blackwell indicated that Claimant drives and completes his activities of daily living without assistance. Gout symptoms have been absent for an extended period until 2021, and GERD controlled with diet. The x-rays in proximity to [DNP] Blackwell's examination . . . showed at least mild findings at the left shoulder, minimal osteoarthritis at the right wrist, no erosive or destructive bony change at the right hand, and only mild left hip osteoarthritis (Exhibit 15F). As above, the Claimant's statements about symptoms do not appear fully consistent with the evidence, and the totality of the record is not consistent with [DNP] Blackwell's medical opinion.

AR 39.

Mr. Stafford argues that the ALJ erred by basing his rejection of DNP Blackwell's opinion on a) exam results that the ALJ erroneously characterized as inconsistent with her opinion, b) the fact that she examined Mr. Stafford only once, and c) the fact that she considered Mr. Stafford's reported symptoms alongside other evidence in assessing his limitations. Doc. 20 at 15–18. Mr. Stafford further argues that the ALJ erred by failing to sufficiently explain the inconsistencies that he perceived between DNP Blackwell's opinion and the "other substantial evidence" he referenced. *Id.* at 18–21.

The Commissioner argues that Mr. Stafford "fails to demonstrate that the ALJ's assessment lacks substantial support [and] merely points out that there is evidence in the record that could have led the ALJ to find [DNP Blackwell's opinion] more persuasive than he did."

7

Doc. 24 at 13. She further contends that ALJ Leppala assessed DNP Blackwell's opinion based on consistency and supportability, "the two most important factors to be assessed under the new regulations,"[7] and made a persuasiveness finding that is "supported by substantial evidence." *Id.* at 13–14. The Commissioner, however, does not specify what part of the ALJ's discussion provides substantial evidence that relates to limitations on sitting, standing, and walking.

The Commissioner also argues that because "the ALJ did not need to reach [DNP] Blackwell's status"—as an accepted medical source who examined Mr. Stafford only once—Mr. Stafford fails to show that the ALJ's reliance on this 'status' was harmful. *Id.* at 14. Similarly, the Commissioner argues, through analogy to *Wilson v. Astrue*, 602 F.3d 1136 (10th Cir. 2010), that "it was appropriate to consider where [DNP] Blackwell got her information from"—i.e., appropriate to reject opined limitations because DNP Blackwell considered Mr. Stafford's reported symptoms in making her assessment. *Id.* at 14–15.

Setting aside for the moment the questions of single examination and consideration of symptoms, I cannot find that ALJ Leppala's rejection of sitting, standing, and walking limitations is supported by substantial evidence. The ALJ did discuss several pieces of evidence

---

[7] Under the revised regulations applicable here, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id*. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. *Id*. §§ 404.1520c(a), 416.920c(a). "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

that might bear on these limitations. Having considered each, I find that none provide substantial evidence to reject these limitations, nor would they in combination.

First, the ALJ suggested that DNP Blackwell's exam results are inconsistent with her opinion, but the only explanation the ALJ gave related to DNP Blackwell's opinion that Mr. Stafford was limited to frequent reaching, handling, grasping, and fingering. AR 39. The ALJ pointed out that "[t]he normal upper extremity range of motion, except for the left shoulder, does not fully support the presence of frequent manipulative limitations in reaching, handling, feeling, grasping, and fingering . . . ." *Id.* The ALJ did not explain how DNP Blackwell's exam results were inconsistent with her determination that Mr. Stafford could only stand or sit three to four hours and walk one to two hours in an eight-hour workday. *See id.* Indeed, DNP Blackwell's examination showed abnormal range of motion in Mr. Stafford's cervical and thoracolumbar spine, left shoulder, right knee, and both ankles. AR 795–96. In examining Mr. Stafford's back, DNP Blackwell found mild tenderness in his thoracolumbar spine and paraspinous muscles, and a straight leg raise test was positive for pain response bilaterally. AR 794–95. These exam results appear consistent with DNP Blackwell's opinion, and the ALJ did not explain why they are not.

Second, the ALJ pointed to Mr. Stafford's return to part-time work and his ability to "complete[] his activities of daily living without assistance" as inconsistent with the limitations assessed by DNP Blackwell. AR 39. The record as a whole belies any inconsistency. Regarding his part-time work, Mr. Stafford testified that he "used to work two five-hour days [as a pitmaster at a local brewery], and it would take [him] until coming back to work, you know, that next week to recover. . . [he] could barely move, and eventually, [he] just had to walk away from that." AR 65. He worked at the brewery from 2018 to 2020, earning a total of less than $16,000 in that time. AR 28. ALJ Leppala recognized that this part-time work "did not reach the level of

substantial gainful activity." *Id.* Given this evidence, the ALJ's characterization of this part-time work as inconsistent with limitations on Mr. Stafford's RFC is perverse; if anything, evidence that Mr. Stafford "tried to work" but decided to stop because of the toll on his body "actually support[s]" DNP Blackwell's assessment. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1038 (9th Cir. 2007); *Kilinshi ex rel. Kilinski v. Astrue*, 430 F. App'x 732, 738 (10th Cir. 2011) (unpublished); *Brito v. Barnhart*, 2004 WL 7337977, at *3 (D.N.M. Apr. 26, 2004) (unpublished) (ALJ should not have relied upon an "unsuccessful work attempt" to support a less-limited RFC).

Third, although the ALJ was correct that Mr. Stafford, in his interview with DNP Blackwell, "state[d] that he does drive and completes his activities of daily living without assistance," that statement is taken out of context. AR 793. The preceding portion of the same paragraph makes clear that, though Mr. Stafford can live independently, he faces pain and physical limitations when doing so: he "experiences significant back pain and requires intermittent rest breaks" when walking two blocks; takes "10 mgs of oxycodone three times a day" and is being treated at a local pain clinic; and moves with "moderately diminished mobility." *Id.* Other evidence in the record, including function reports by Mr. Stafford and his girlfriend, further undermine the notion that Mr. Stafford is living a daily life free from substantial pain and limitations. Because of his back pain, he gets limited and interrupted sleep and is exhausted in the morning, AR 317; household chores are strenuous and exacerbate his pain, AR 318, as does standing to prepare food, AR 320. Mr. Stafford's daily activities do not at all resemble full-time work: he "watch[es] TV most of the day," only occasionally leaving the house to get a drink at the convenience store, and he must "switch positions often" to remain comfortable. AR 356. In his current living situation, Mr. Stafford's daughter mostly takes care of

the home; he vacuums his own room and makes his bed with difficulty, and often uses paper plates to minimize the dishes he must wash. AR 72. These daily activities are not substantial evidence that supports the ALJ's rejection of DNP Blackwell's opinion. *See Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987). "[W]hen considered at a more detailed realistic level, [these] activities," much like Mr. Stafford's part-time work, "are more consistent with . . . significant physical limitation than with the ALJ's conclusion." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011). Mr. Stafford "should not be penalized for attempting to lead [a] normal li[fe] in the face of [his] limitations." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020).

ALJ Leppala also noted that Mr. Stafford's gout has been absent for several years until a flare-up in 2021, that his gastric symptoms are well-controlled with a suitable diet, and that an x-ray taken around the same time as DNP Blackwell's examination showed "only mild left hip osteoarthritis." AR 39. These citations are not salient to the sitting, standing, and walking limitations assessed by DNP Blackwell, which apply *in the absence* of each of the ailments to which these facts pertain.[8] AR 38. In addition, the x-rays on which the ALJ relied do not include any images of his back, right knee, or ankle, *see* AR 801–05, which were the areas where DNP Blackwell found abnormal range of movement, and which presumably affected his ability to sit, walk, and stand.

---

[8] DNP Blackwell did not specify, but the only logical understanding of her assessment is that Mr. Stafford's limitations would be *more* strict when he is experiencing symptoms from the ailments she lists. *See* AR 798. In DNP Blackwell's opinion, Mr. Stafford would walk one to two hours in an eight-hour workday, and sit or stand three to four hours, "if *not* experiencing symptoms of back injury, gout, L[eft] shoulder injury, DDD [degenerative disc disease], L[eft] hip pain, or IBS [irritable bowel syndrome]." *Id.* In other words, if Mr. Stafford was experiencing any of those symptoms, his ability to walk, stand, and/or sit would be more limited.

The ALJ's discussion of DNP Blackwell's opinion contains two other potential reasons for rejecting her assessed limitations: DNP Blackwell examined Mr. Stafford only once and based her assessment in part on his subjective symptoms. If objective evidence cast doubt on DNP Blackwell's assessment, these facts might bolster the ALJ's decision. Standing alone, they do not.

While it is true that DNP Blackwell's professional relationship with Mr. Stafford is limited to a single examination, this is "not by itself a basis for rejecting [her opinion]—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). In this case, DNP Blackwell's status as an examining medical source is, if anything, a reason to endorse her assessment. The only opinion based on a more extensive relationship—which ALJ Leppala found "somewhat persuasive"—is that of Dr. Timothy Burd. That opinion is nearly two-and-a-half years older than DNP Blackwell's and is much more cursory in its treatment of work restrictions. *See* AR 479. That said, the limitations assessed by Dr. Burd contain a limitation—"[a]bility to change positions as needed for comfort"—that is concordant with the limits on sitting, standing, and walking assessed by DNP Blackwell. *Id.* Dr. Burd's limitation is also absent from the RFC. The relevant limits found in the RFC—which are less strict—reflect the opinions of two State agency medical consultants. These opinions are based exclusively on review of Mr. Stafford's medical records and are "entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also* 20 CFR § 1520c(c)(3)(v) ("A medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.").

Regarding the influence of Mr. Stafford's subjective symptoms on DNP Blackwell's opinion, ALJ Leppala said only that DNP Blackwell "relied on the Claimant's reported symptoms as well."[9] AR 39. This undifferentiated claim would be insufficient to reject even an examining opinion that relied primarily on subjective allegation. It certainly is insufficient when addressed to DNP Blackwell's opinion, which is supported by an objective examination.

It is plain from DNP Blackwell's opinion that she considered Mr. Stafford's symptom allegations. This is entirely appropriate when assessing a claimant whose primary complaint is debilitating pain. *See Nieto v. Heckler*, 750 F.2d 59, 61–62 (10th Cir. 1984) ("A medical opinion based on [factors including evaluation of subjective complaints of pain] is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim."). Nonetheless, the sitting, standing, and walking limitations that DNP Blackwell assessed were explicitly "supported by physical exam findings of normal sensation of his BL lower extremities, normal gait and abnormal musculoskeletal assessment." AR 798. Given that physical examination included a "straight leg raise test" that was positive for pain bilaterally, and range of motion testing that showed meaningful deficits in 11 out of 12 spinal movement tests, DNP Blackwell's findings seem to reflect these objective bases. AR 794–95. Rejecting these findings solely because DNP Blackwell also considered Mr. Stafford's symptoms "impermissibly substitutes [the ALJ's] judgment for that of [DNP Blackwell]." *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005). Moreover, the ALJ acknowledged that from May 2017, there "has been a long and consistent history of pain management at

---

[9] The following sentence reads: "With the presence of the Claimant's symptoms, she indicated the Claimant may be unable to perform work within the limitations stated." AR 39. If the ALJ intends to cast DNP Blackwell's proviso—that her opined limitations apply in the absence of certain ailments—as *reliance* on symptoms, his reasoning is patently backward.

13

different facilities, continuing through the date of this decision." AR 36. Thus, the fact that DNP Blackwell considered Mr. Stafford's pain symptoms—which were well supported by the medical evidence—is not a valid basis for rejecting her opinion.

## VI.    Conclusion

Having considered each piece of evidence in ALJ Leppala's discussion of DNP Blackwell's opinion and concluded that none provide substantial evidence that supports rejecting the sitting, standing, and walking limitations assessed in that opinion, the Court reverses and remands so that the ALJ may reconsider his treatment of that opinion. The Court does not reach Mr. Stafford's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent